C. D. WALLACE, B. C. WALLACE AND L. C. WALLACE, CO-PARTNERS, DOING BUSINESS AS WALLACE BROTHERS, v. W. P. BENNER AND BETTIE F. BENNER, HIS WIFE; P. K. KENNEDY, TRUSTEE; T. B. WILDER, TRUSTEE; PAGE TRUST COMPANY AND NORTH CAROLINA JOINT STOCK LAND BANK.

(Filed 27 January, 1931.)

1. **Reference C a—Court may affirm, modify, set aside, or disaffirm report of referee.**

   The Superior Court, on exceptions taken to the referee's report, may affirm, set aside, make additional findings, modify, or disaffirm the report. C. S., 578, 579.

2. **Appeal and Error J c—Findings of fact supported by evidence are conclusive on appeal.**

   The findings of fact by the referee approved by the trial judge, supported by competent evidence, cannot be reviewed in the Supreme Court on appeal.

3. **Mortgages E b—Party advancing funds used in payment of first mortgage is entitled to subrogation to first lien as against junior lienors.**

   Where the application for a loan from a Federal land bank expressly sets up prior registration mortgages on the lands and states that with the proceeds of the loan applied for the prior mortgages shall be paid (the law requiring a first lien) and the land bank accepts the application and sends its check to its attorney investigating the title to be endorsed by him and the borrower and used in conformity with the instructions that a first lien would be created on the lands for its loan, and in disobedience

to these instructions the loan is used to pay off the first mortgage but not the second, *Held:* the land bank is entitled in equity to subrogation to the lien of the first mortgage as against the second mortgagee, and the agreement of the first lienor to this effect operates as an equitable assignment of his lien giving priority over the lien of the second mortgage.

4. **Subrogation A b—Party advancing funds used to pay first mortgage lien held entitled to prior lien as against junior lienors.**

   Where money is advanced to discharge a mortgage encumbrance on land and the mortgage debt is thus discharged, the lender is not regarded as a mere volunteer, and is entitled under an agreement to an equitable assignment of the mortgage lien and holds the same in subrogation as against a lienor under a junior mortgage, and *held further*, that under the facts of this case the exceptions to the general rule of equitable subrogation do not apply.

5. **Mortgages C c—C. S., 3311, does not apply to equitable subrogation to first lien by party advancing funds for payment of first mortgage.**

   Our statute requiring the registration of instruments to give priority of liens in certain instances, C. S., 3311, does not apply to the application of the equitable subrogation of lien in favor of one advancing money to pay off existing mortgage liens upon lands.

APPEAL by plaintiffs from *McElroy, J.,* at September Term, 1930, of Moore. Affirmed.

Facts pertinent to this appeal, as found by the referee and modified by the judge are as follows:

In the spring of 1923, Bettie F. Benner was the owner of 300 acres of land, located in Moore County, subject to certain encumbrances which she and her husband had executed thereon, said encumbrances having priority one over the other as follows:

First, deed of trust to Thomas B. Wilder, trustee, securing principal indebtedness of $15,000, evidenced by notes payable to Page Trust Company, dated 31 January, 1920, recorded in register of deeds office for Moore County, 16 February, 1920, Book of Mortgages 31, pages 41 and 42.

Second, deed of trust to P. K. Kennedy, trustee, securing principal indebtedness of $1,500, evidenced by notes payable to Page Trust Company, dated 10 May, 1920, recorded in register of deeds office for Moore County, 24 May, 1920, Book of Mortgages 32, at page 177.

Third, mortgage to Wallace Brothers (plaintiffs) securing principal indebtedness of $2,117.07, dated 15 December, 1921, recorded in register of deeds office for Moore County, 20 December, 1921, Book of Mortgages 34, at p. 537.

On or about 24 April, 1923, Bettie F. Benner made written application to defendant, North Carolina Joint Stock Land Bank of Durham,

requesting a loan upon the usual amortization plan in the sum of $18,500, agreeing to secure said loan with a first mortgage on the 300 acres owned by her. Said application enumerated the respective liens against the land above set forth and stated that the purpose of the loan was to pay off these prior encumbrances. Her reason for applying for this loan was because she had defaulted in payment of the first and largest lien and her lands were being advertised for sale and she hoped to save her lands by refinancing.

The defendant, Land Bank, approved this loan for $12,500. Abstract of title was prepared and furnished by S. R. Hoyle, attorney, and Johnson & Johnson, attorneys. Said abstract set out the several encumbrances against the land. Bettie F. Benner and husband, W. P. Benner, executed note and deed of trust in favor of the defendant, Land Bank, and said deed of trust was dated 12 April, 1923, and duly recorded in registry of Moore County, 26 April, 1923, in Book of Mortgages 39, at p. 182. There was delay in closing loan due to fact that the bank could not furnish the money due to inability to market its bonds.

On 24 April, 1924, defendant bank issued its check payable to Bettie F. Benner, and Johnson & Johnson, attorneys, in the sum of $12,273.53, which represented net proceeds of loan after deducting expenses of bank and adjusting accrued interest. The bank sent this check to Johnson & Johnson, attorneys, with instructions that prior encumbrances be removed before delivery of check, or money refunded.

In disobedience of said instructions, without procuring cancellation of prior encumbrances, and without the knowledge or consent of defendant, Land Bank, a member of the firm of Johnson & Johnson, attorneys, procured endorsement of Bettie F. Benner to said check, cashed same and disbursed proceeds thereof, after first deducting $200 as attorney fees, as follows: Paid 1923 and 1924 taxes $272.68, balance $11,800.85 to Page Trust Company.

Page Trust Company applied this money as follows: $1,250 was used for purchase of stock North Carolina Joint Stock Land Bank of Durham, and said stock was hypothecated and held as collateral security to the $1,500, Kennedy deed of trust. This stock was later sold for $1,300, and said amount was applied on Kennedy deed of trust. The balance of said $11,800.85, to wit: $11,550.85, was paid over to Page and Company—then owner and holder of Wilder deed of trust, and notes thereby secured.

At the time of receiving this money, Page and Company and Page Trust Company, through its officers, were aware of the entire situation and knew that all encumbrances against the land prior to the defendant, Land Bank's deed of trust would have to be removed or released. At

said time, Johnson & Johnson, attorneys, represented generally, both Page and Company and Page Trust Company.

The defendant bank had no actual knowledge of the fact that its instructions had been disobeyed and prior liens not removed, until a short time before commencement of this action. The Land Bank being under supervision of acts of Congress was required by such acts to accept only first mortgages and in this case, it intended and expected to accept only a first lien, and believed and acted upon the assumption that its mortgage was a first lien until notice to the contrary was received.

All of said liens now appear uncanceled of record and the Benners have defaulted in payment of all of said liens and each lien is subject to foreclosure.

Referee's findings of facts show respective amounts due on the several liens.

Page and Company and Page Trust Company, through Johnson & Johnson, attorneys, representing them in this cause, in request for findings of facts submitted to referee, have waived their rights in favor of defendant, Land Bank, agreeing so far as their claims are concerned to recognize and allow the bank's claim as having priority.

The judgment of the court below is as follows: "This cause coming on to be heard and being heard before his Honor, P. A. McElroy, presiding judge, at the September Term, 1930, of the Superior Court of Moore County upon the plaintiffs' exceptions to the report of the referee, C. A. Armstrong, said report having been filed 15 February, 1930, and the facts having been found by the court to be as stated in said report of the referee, except as the same have been changed or modified by the statement of the court signed by his Honor which is made a part of the record in this cause, and upon and after hearing Messrs. Seawell and Seawell, attorneys for the plaintiffs, Mr. W. G. Mordecai, attorney for the defendant North Carolina Joint Stock Land Bank of Durham, and Murdoch M. Johnson, attorney for Page Trust Company and Page and Company, it is considered, ordered, adjudged and decreed that the said North Carolina Joint Stock Land Bank of Durham be subrogated to and have an equitable assignment of the liens of the defendants, Bettie F. Benner and W. P. Benner, to T. B. Wilder, trustee, and Bettie F. Benner and W. P. Benner to P. K. Kennedy, trustee, to the extent of the sum of $12,273.53, less $200 charged and received by Johnson and Johnson as attorneys' fees, the said sum of $12,273.53 being the amount of the check of the said North Carolina Joint Stock Land Bank to Johnson and Johnson, attorneys, and Bettie F. Benner, and the said Johnson and Johnson, attorneys, retaining from the proceeds thereof the sum of $200 attorneys' fees, and disbursing the

balance, to wit, the sum of $12,073.53, in the payment of taxes on the premises secured by the deeds of trust herein and the balance after payment of the said taxes, namely, $11,800.85, to Page Trust Company and Page and Company for application of the indebtedness secured by the deed of trust to T. B. Wilder, trustee, and the deed of trust to P. K. Kennedy, trustee, so that the extent of the subrogation of the Land Bank to the said deeds of trust to Wilder, trustee, and Kennedy, trustee, is adjudged and decreed to be the sum of $12,273.53, with interest thereon from 24 April, 1924.

"It is further ordered and adjudged that the defendant, Page and Company, recover judgment against the defendants, Bettie F. Benner and W. P. Benner, in the sum of $18,825 as of 1 December, 1929; it is ordered and adjudged that the defendant, Page Trust Company, recover judgment of the defendants, Bettie F. Benner and W. P. Benner, in the sum of $2,142.75 as of 1 December, 1929, but that the judgments for said amounts in favor of the said Page and Company and in favor of the said Page Trust Company be held in trust by the said North Carolina Joint Stock Land Bank of Durham to the extent and amount of the subrogation as hereinbefore set forth; it is further ordered and adjudged that the plaintiffs recover of the defendants, Bettie F. Benner and W. P. Benner, the sum of $2,801 as of 23 February, 1928; it is further ordered and adjudged that the defendant, North Carolina Joint Stock Land Bank of Durham recover judgment of the defendants, Bettie F. Benner and W. P. Benner, in the sum of $426.67 with interest thereon from 24 April, 1924, the same being the difference between the amount of the subrogation and the amount of the indebtedness owing by the said Bettie F. Benner and W. P. Benner to the said North Carolina Joint Stock Land Bank of Durham.

"It is further ordered, adjudged and decreed that the conditions of the deed of trust of the said Bettie F. Benner and W. P. Benner to T. B. Wilder, trustee, the deed of trust of Bettie F. Benner and W. P. Benner to P. K. Kennedy, trustee, the mortgage deed of Bettie F. Benner and W. P. Benner to the plaintiffs and the deed of trust of Bettie F. Benner and W. P. Benner to First National Company, trustee for North Carolina Joint Stock Land Bank of Durham have all been broken, that the equity and equities of redemption of the said Bettie F. Benner and W. P. Benner be and the same are hereby forever barred and that W. G. Mordecai and Murdoch M. Johnson be and they are hereby appointed commissioners of the court to advertise the lands mentioned and described in the pleadings herein and the different mortgages and deeds of trust herein for sale to the highest bidder, for cash, before the courthouse door of Moore County, North Carolina, at some convenient

sales day hereafter, in accordance with law, and that they apply the proceeds of such sale as follows:

"1. To the payment of the costs and disbursements of this action up to and including the costs incurred at this term of the court, but not thereafter.

"2. Pay to C. A. Armstrong, referee, for his services as such referee herein the sum of $200.

"3. Pay and receive to themselves for their services as commissioners an amount equal to five per centum of the proceeds of the sale.

"4. Next pay to the North Carolina Joint Stock Land Bank of Durham the sum of $12,073.53, with interest thereon from 24 April, 1924.

"5. Next pay to Page and Company the sum of $18,825 with interest on $15,000 from 1 December, 1929, less the sum of $12,073.53 and interest, being the amount paid to the said North Carolina Joint Stock Land Bank, the said Page and Company and Page Trust Company having agreed that the North Carolina Joint Stock Land Bank to the extent as above stated should have priority over both of their liens regardless of the application of the moneys received from the Land Bank and the lien of Page and Company being superior to that of Page Trust Company.

"6. Pay Page Trust Company out of any balance the sum of $1,500 with interest thereon from 1 December, 1929.

"7. Pay Wallace Brothers out of any balance after the applications as above set forth the sum of $2,801.08, with interest thereon from 23 February, 1929.

"8. Pay the balance, if any, to Bettie F. Benner and W. P. Benner.

"It is further ordered, adjudged and decreed that the commissioners make report of such sale to the clerk of the court and that said sale be confirmed by the clerk before the delivery of deed and that the said commissioners further make due report of their receipts and disbursements."

The only exception and assignment of error is to the judgment rendered on the findings as modified by the court below.

*H. F. Seawell, Jr., for plaintiff.*
*W. G. Mordecai and J. Earle Baker for Land Bank.*
*Johnson & Johnson for defendants P. K. Kennedy, trustee and T. B. Wilder, trustee et al.*

CLARKSON, J. On exceptions to report of referee on reference to report facts, Superior Court may affirm, modify, set aside, or make additional findings, and may confirm or disaffirm report. (C. S., 578, 579); *Hardaway Contracting Co. v. Western Carolina Power Co.,* 195 N. C., 649; *Mills v. Apex Ins. & Realty Co.,* 196 N. C., 223; *American Trust*

*Co. v. Jenkins,* 196 N. C., 428; *First Security Trust Co. v. Lentz,* 196 N. C., 398. In a long line of unbroken decisions, the findings of fact of a referee approved by the trial judge cannot be reviewed upon appeal if supported by any competent evidence. It is only when it is objected that there is no evidence or no competent evidence in support of the findings that a question of law is raised which the Supreme Court can decide. *Caldwell v. Robinson,* 179 N. C., p. 521. In the present action there was competent and sufficient evidence to support the findings of the court below.

The question involved: Where an attorney, who is entrusted with duties of closing a loan for a Land Bank, pays over the net proceeds of the loan to the holder of a first mortgage and, in disobedience to specific instructions from the Land Bank, and contrary to the Federal Farm Loan Act which requires a first lien on farm property, fails to discharge and cancel of record said first mortgage and also a second mortgage known to exist against the land, is the Land Bank entitled to an equitable assignment of, or to subrogation in, the first mortgage to the extent of its money which has been so applied on the first mortgage as against the holder of the second mortgage who received no part of the proceeds of the Land Bank's loan and who entered into no agreement either to cancel or subrogate his lien? Under facts of this case does the waiver made by the holders of first liens against the property in favor of the defendant Land Bank operate as a legal assignment of the first liens? Under all the facts and circumstances of this case, we think the doctrine of subrogation applies and the North Carolina Joint Stock Land Bank of Durham is entitled to priority over plaintiffs.

Speaking of subrogation, in *Publishing Co. v. Barber,* 165 N. C., at pp. 487-8, it is said: "The doctrine is one of equity and benevolence, and, like contribution and other similar equitable rights, was adopted from the civil law, and its basis is the doing of complete, essential, and perfect justice between all the parties without regard to form, and its object is the prevention of injustice." *Jeffreys v. Hocutt,* 195 N. C., 339; *Morris v. Y. & B. Corp.,* 198 N. C., at p. 717.

The right of subrogation has its rise, not in contract, but in equity, *Powell v. Wake Water Co.,* 171 N. C., 290. As distinguished from legal subrogation, conventional subrogation is founded on the agreement of the parties in the nature of an equitable assignment, while the former exists where one who has an interest to protect, or is secondarily liable, makes payment of the obligation. *Joyner v. Reflector Co.,* 176 N. C., 274. Many of the authorities hold, which we think correct, that the agreement can be implied from all the facts and circumstances of the particular case. The principle of subrogation does not prevail in favor of a mere volunteer. *Blacknall v. Hancock,* 182 N. C., 369.

We think the principle applicable in this case is clearly set forth in Jones on Mortgages (8 ed., 1928), part sec. 1114, pp. 559-560: " 'There is clearly no scope for the operation of the principle of equitable subrogation in a case of ordinary borrowing, where there is no fraud or misrepresentation, and the borrower creates in favor of the lender a new and valid security, although the funds are used in order to discharge a prior encumbrance. In such case, the lender is treated as a mere volunteer in the transaction. But the rule is settled that, where money is expressly advanced in order to extinguish a prior encumbrance, and is used for this purpose, with the just expectation on the part of the lender of obtaining a valid security, or where its payment is secured by a mortgage which for any reason is adjudged to be defective, the lender or mortgagee may be subrogated to the rights of the prior encumbrancer whose claim he has satisfied, there being no intervening equity to prevent. It is of the essence of this doctrine that equity does not allow the encumbrance to become satisfied as to the advancer of the money for such purposes, but as to him keeps it alive, and as though it had been assigned to him as security for the money.' " *Bigelow v. Scott,* 135 Ala., 236, sec. 1115; Jones, *supra:* "Subrogation may arise by agreement between mortgage debtor and a third person, whereby the latter, upon paying the mortgage debt, is substituted in place of the mortgage creditor in respect to the security. 'Where money is advanced to a debtor in pursuance of an express agreement that it is to be used to retire existing liens or encumbrances on his property, and that the creditor who loans the money is to have a first lien upon the property to secure its repayment, such creditor may be subrogated to the rights of the encumbrancer or lienor whose debt has been paid, not only as against the borrower, but as against any one else who subsequently acquires an interest in the property with knowledge of the circumstances under which the money to pay off the encumbrances or liens was advanced.' Also, 'if the money is advanced to a debtor to discharge an existing first mortgage upon his property, and in pursuance of an agreement that the lender is to have a first lien upon the property for the repayment of the sum loaned, the lender is entitled, as against a junior encumbrancer, to be treated as the assignee of the first mortgage which has been paid off and discharged with the money loaned, whenever it becomes necessary to do so to effectuate the agreement with the lender, and to prevent the junior encumbrance from being raised accidentally to the dignity of a first lien, contrary to the intention of the parties.' " 37 Cyc., pages 471, 472, 473, 474, 475 and 476.

In 25 R. C. L., pages 1339-40, under title "Subrogation," sec. 23, after stating that the rule of subrogation has no application to a stranger or volunteer who pays off a prior encumbrance, continues as

follows: "And if money is advanced to a debtor to discharge an existing first mortgage upon his property and in pursuance of an agreement that the lender is to have a first lien upon the property for the repayment of the sum loaned, the lender is entitled, as against a junior encumbrancer, to be treated as the assignee of the first mortgage, which has been paid off and discharged with the money loaned, whenever it becomes necessary to do so to effectuate the agreement with the lender, and to prevent the junior encumbrance from being raised accidentally to the dignity of a first lien, contrary to the intention of the parties. This is a just and reasonable rule. It effects the intention of the parties, preserves to the payor the benefit of his payment, leaves the inferior lienor in his former position, inflicts no injury upon him, prevents injury to the payor through mistake or ignorance of the inferior lien, and works. exact justice to all." R. C. L., sec. 24, pp. 1340-41. *Louisville Joint Stock Land Bank v. Bank of Pembroke,* 225 Ky., 375.

In *Bank v. Bank,* 158 N. C., at p. 243, we find: "The plaintiff's claim appeals very strongly to the conscience of the court, and we think it is sustained by well-settled principles. The doctrine of subrogation rests upon principles of natural justice and equity, and there are numerous authorities which support the rule that one who, at the request of another, advances money to pay off a security or encumbrance, in which the latter is interested or to the discharge of which he is bound, under the agreement that he shall have the benefit of the creditor's security, is entitled to be subrogated to the rights of the creditor in the security; and some cases hold that, in the absence of an express agreement, one will be implied that the security shall subsist for the use and benefit of the lender of the money, and it will be so enforced. *Gans v. Thieme,* 93 N. Y., 225; *Levy v. Martin,* 48 Wis., 198; *Wilkins v. Gibson,* 113 Ga., 31."

This Court has long recognized the equitable doctrine of subrogation in numerous cases. *Springs v. Harven,* 56 N. C., 97; *Byerly v. Humphrey,* 95 N. C., 151; *Liles v. Rogers,* 113 N. C., 197; *Cutchin v. Johnston,* 120 N. C., 51; *Moring v. Privott,* 146 N. C., 558; *Chandler v. Jones,* 172 N. C., 569; *Caldwell v. Robinson,* 179 N. C., 518; *Grantham v. Nunn,* 187 N. C., 394; *Saleeby v. Brown,* 190 N. C., 138; *Jeffreys v. Hocutt,* 195 N. C., 339; *Morris v. Cleve,* 197 N. C., 253; *Morris v. Y. & B. Corp., supra.*

The exceptions to the general rule to the doctrine of subrogation: (1) The relief is not granted to a volunteer; (2) nor where the party claiming relief is guilty of culpable negligence; (3) nor where to grant relief will operate to the prejudice of the junior lien holder.

We do not think defendant Land Bank comes within any of these exceptions. We can see no injustice or wrong done plaintiffs. Plain-

tiffs' lien was junior to the others and they still hold the same rights they always had; on the other hand, the Land Bank would have never loaned the money, in fact, it was not permitted to do so by law, except on a first lien, and it took every precaution, that due care required, to see that it had a first lien. It would be inequitable and unconscionable if the Land Bank was not, under facts disclosed on this record, entitled to subrogation. We do not think C. S., 3311, the Connor Act, has any application to the questions here involved. The judgment below is

Affirmed.