In re Rudy V. PRICE, SS#: 246–66–9188, Janet K. Price, SS#: 575–44–3576, Debtors.

**Bankruptcy No. 88–02089–SN5.**

United States Bankruptcy Court, E.D. North Carolina.

March 15, 1989.

Jeffrey M. Seigle, Raleigh, N.C., for debtors.

Holmes P. Harden, Raleigh, N.C., for trustee.

N. Hunter Wyche, Jr., Raleigh, N.C., for Southern Nat. Bank.

Phil Glass, Raleigh, N.C., for Planters Nat. Bank.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

On December 16, 1988, the trustee in this chapter 7 case sold real property located in Wake County, North Carolina, by public auction to Planters National Bank ("Planters") for $90,000. The purpose of this proceeding is to determine which creditors are entitled to the proceeds. A hearing was held in Raleigh, North Carolina, on March 6, 1989. The primary issue is the validity of the lien asserted by Southern National Bank ("Southern").[1]

### FACTS

Rudy V. Price and Janet K. Price, the debtors in this chapter 7 case, borrowed $69,000 from Southern on January 21, 1987. The loan was evidenced by a promissory note and was secured by a duly executed and properly perfected first deed of trust encumbering the real property which was the subject of the trustee's sale. The loan balance was $69,195.41 as of September 15, 1988, the date of the debtors' chapter 7 petition.

Subsequent to the Southern loan, the debtors also received a loan from Planters which is evidenced by a promissory note and is secured by a duly executed and properly perfected second deed of trust on the same property. The amount of the debt secured by Planters' lien was $39,-957.59 as of January 31, 1989, plus interest at the per diem rate of $12.41 thereafter. It is not disputed that, at the time Planters

---

1. Bankruptcy Rule 7001(2) provides that a proceeding to determine the validity of a lien shall be an adversary proceeding. The parties have all agreed that the court may determine the validity of Southern's lien without the formalities of an adversary proceeding.

made its loan, Planters understood that its lien was a second deed of trust.[2]

On February 23, 1988, the Southern deed of trust was cancelled of record at the Wake County Registry. Southern contends that the cancellation was accidentally authorized by Southern and there is no evidence to the contrary. Southern maintains that it would have the right to have the cancellation removed from the record were it not for the automatic stay of 11 U.S.C. § 362(a).

The trustee, however, now seeks to avoid Southern's deed of trust pursuant to 11 U.S.C. § 544(a)(3). Planters supports the avoidance of Southern's lien.

## DISCUSSION AND CONCLUSION

11 U.S.C. § 544(a)(3) gives to a trustee in bankruptcy the status of a *bona fide* purchaser of real estate from the debtor as of the commencement of the case.[3] Armed with that status the trustee may defeat those interests which a *bona fide* purchaser for value would defeat under North Carolina law. North Carolina is essentially a "race" recordation state in which a purchaser for value of real property who records first has priority over prior unrecorded conveyances, even where the purchaser has knowledge of the prior unrecorded conveyance. "A number of legal writers call North Carolina's statute a 'pure race' statute meaning that the one who wins the race to the Register of Deeds' office will have priority." *Webster's Real Estate Law in North Carolina* § 370, p. 448 (3rd ed. 1988). *See* N.C.GEN. STAT. §§ 47–18, 47–20. *See also Hill v. Pinelawn Memorial Park, Inc.,* 304 N.C. 159, 282 S.E.2d 779 (1981); *Bourne v. Lay & Co.,* 264 N.C. 33, 140 S.E.2d 769 (1965); *Patterson v. Bryant,* 216 N.C. 550, 5 S.E.

2d 849 (1939). The North Carolina Supreme Court has stated that:

> [t]he purpose of the [registration] statute is to point out to prospective purchasers the one place where they must go to find the condition of land titles—the public registry. "Notice, however full and formal, cannot take the place of registered documents." *Hege v. Sellers,* 241 N.C. 240, 84 S.E.2d 892, 898; *Eller v. Arnold,* 230 N.C. 418, 53 S.E.2d 266; *Winston v. Lumber Co.,* 227 N.C. 339, 42 S.E.2d 218; *Turner v. Glenn,* 220 N.C. 620, 18 S.E.2d 197; *Hinton v. Williams,* 170 N.C. 115, 86 S.E. 994; *Austin v. Staten,* 126 N.C. 783, 36 S.E. 338.

*Hayes v. Ricard,* 245 N.C. 687, 97 S.E.2d 105, 109 (1957).

There are circumstances in which an equitable lien will defeat the rights of a *bona fide* purchaser, but those circumstances are rare.[4] In *Matter of Mitchell,* 55 B.R. 700 (E.D.N.C.1985), a Chapter 7 case under the Bankruptcy Act of 1898, the court upheld an equitable lien where the creditor had been induced by the debtor's fraud to cancel a deed of trust.[5] In the present case there was no fraud. At best, Southern cancelled the deed of trust by mistake. In *Mitchell* the court also pointed out that there was no evidence that the creditor was a sophisticated lender. *Id.* at 702. Unlike the creditor in *Mitchell,* Southern is hardly inexperienced in these matters.

■ Avoiding Southern's lien is a harsh remedy, but that is nevertheless what the law requires. 11 U.S.C. § 544(a)(3) gives the trustee the status of a *bona fide* purchaser of real property, and under North Carolina law a *bona fide* purchaser prevails against a bank which erroneously cancelled its deed of trust. An equitable lien may alter that result in some circumstanc-

---

**2.** Southern's Memorandum filed on February 14, 1989, states that Planters' second lien identifies the Southern lien as having priority. The Planters' deed of trust, however, was not attached to the Memorandum as stated and was never offered into evidence.

**3.** The wisdom of giving a bankruptcy trustee this status has been criticized, but the language of the statute could not be clearer. *See* T.

Jackson, *The Logic and Limits of Bankruptcy Law* 75–79 (1986).

**4.** *Angeles Real Estate Co. v. Kerxton,* 737 F.2d 416 (4th Cir.1984) (applying Maryland law).

**5.** In *Mitchell* the debtor gave the creditor a check in payment of the debt. The debtor then stopped payment on the check after the deed of trust was released.

es, but those circumstances are not present here. Accordingly, Southern's deed of trust is avoided pursuant to 11 U.S.C. § 544(a)(3).

What then is the effect of avoiding Southern's lien on the second deed of trust held by Planters? According to Planters, the second lien moves into first position. That, however, is not so. The avoided lien is preserved for the benefit of the estate pursuant to 11 U.S.C. § 551.

It is true that the Southern deed of trust was cancelled and the real estate record shows that the Planters' lien is first. As between Southern and Planters, however, Southern could rescind the accidentally cancelled deed of trust and maintain the first position. *See Monteith v. Welch*, 244 N.C. 415, 94 S.E.2d 345 (1956). Planters is not a *bona fide* purchaser with respect to Southern's lien. Planters clearly knew of the Southern lien when the Planters' loan was made and did not change its position in reliance on the erroneous cancellation. The trustee may preserve Southern's deed of trust to partially defeat Planters' lien. Planters is entitled to the sales proceeds ($90,000.00) less the costs of the sale and less the amount of Southern's lien ($69,-145.00). The trustee shall distribute the sale proceeds in accordance with this opinion.

SO ORDERED.