**In re Jonathan Eric KLINE and Linda McNeill Kline, Tax I.D. No.: 312–82–5098 and 238–76–2444, Debtors.**

**Langdon M. Cooper, Trustee in Bankruptcy for Jonathan Eric Kline and wife Linda McNeill Kline, Plaintiff,**

v.

**Mortgage Investors Corporation; Source One Mortgage Services Corporation; Litton Loan Servicing LP; Firstplus Financial, Inc.; Jonathan Eric Kline; and Linda McNeill Kline, Defendants.**

Bankruptcy No. 98–40827.

Adversary No. 99–4026.

United States Bankruptcy Court, W.D. North Carolina, Charlotte Division.

Dec. 7, 1999.

---

Langdon M. Cooper, Alala, Mullen, Holland & Cooper, PA, Gastonia, NC, trustee.

William Walt Pettit, Charlotte, NC.

## ORDER DENYING MOTION TO DISMISS OF FIRSTPLUS FINANCIAL, INC.

MARVIN R. WOOTEN, Bankruptcy Judge.

THIS MATTER came on to be heard after notice and a hearing on the Motion of the Defendant FirstPlus Financial, Inc., by and through its sub-servicer Western Interstate Bancorp (the "Motion"), and the Response in opposition to the Defendant's Motion filed by Langdon A. Cooper, Trustee in Bankruptcy for Jonathan Eric Kline and Linda McNeill Kline; and after considering the record and the arguments of counsel, it appears the Motion should be denied; in this regard, the Court finds and concludes as follows:

### BACKGROUND

The Plaintiff is a resident of Gaston County, North Carolina, and is the duly qualified and presently serving trustee in bankruptcy for debtors Jonathan Eric Kline and Linda McNeill Kline (the "Debtors"). The Debtors filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code (the "Code") on 16 December 1998. On 17 December 1998 Plaintiff was appointed to serve as the Trustee.

On 21 June 1999 the Trustee filed this adversary proceeding against the Defendants to:

Recover and preserve avoidable transfers;

Determine priorities of Debtors' exemption in real estate;

Determine priorities of the other defendants in real estate;

Sell realty, and/or only the Trustee's interest therein, free and clear; and

Recover avoidable preferences paid to certain defendants.

The following description of the facts describes the transactions that the Trustee seeks to avoid and preserve for the estate.

The Complaint's first three claims for relief all pertain to defendant FirstPlus. The pertinent allegations are that the Debtors purchased a house at 115 Sador Street, Cherryville (the "Property") on 15 May 1995. Although most of Cherryville is in Gaston County, the Property was located in that small portion of Cherryville that is in Cleveland County. To obtain a loan for the purchase price, the Debtors gave Branch Banking & Trust Company ("BB & T") a first lien deed of trust on the Property that was recorded on 15 May 1995 in Cleveland County.

On or about 25 August 1997 the Debtors granted defendant FirstPlus a second lien deed of trust on the Property. FirstPlus recorded its deed of trust on 9 September 1997 in Cleveland County. At the time FirstPlus received and recorded its deed of trust, FirstPlus knew that its deed of

trust was a second lien deed of trust and that it was subordinate to BB & T's first lien deed of trust.

On 23 April 1998 the Debtors granted a deed of trust to defendant Mortgage Investors Corporation ("Mortgage Investors"). With the proceeds of Mortgage Investors' loan, the Debtors' note to BB & T was satisfied and BB & T cancelled its first lien deed of trust. Mortgage Investors, however, failed to file its deed of trust in Cleveland County and, instead, filed the deed of trust in Gaston County. Mortgage Investors assigned its interest in its deed of trust to the defendant Source One Mortgage Services Corporation ("Source One") which subsequently assigned its interest to the defendant Litton Loan Servicing, L.P. ("Litton Loan").

### STANDARD OF REVIEW

The Court may grant a motion to dismiss under Fed.R.Civ.P. 12(b)(6) only if it appears beyond doubt that the nonmoving party can prove no set of facts in support of its claim which would entitle it to relief. Further, a court should accept as true all well-pleaded allegations of the complaint, and construe the complaint in the light most favorable to the nonmoving party. *See, e.g., Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th. Cir.1993). Therefore, the only question is whether the Trustee can prove no set of facts in support of its claim which would entitle it to relief if the court accepts as true the Trustee's allegations. The answer to that question is an unequivocal "No".

### ANALYSIS

At the heart of the Trustee's Complaint is the claim that he is allowed to use the doctrine of equitable subrogation to obtain a first lien priority status and, therefore, to prevent FirstPlus from being unjustly enriched by Mortgage Investors' failure to perfect its lien properly. To reach this result involves two steps.

### I. Avoidance of Mortgage Investors' Deed of Trust Pursuant to § 544

■ First, pursuant to § 544 of the Code, the Trustee may avoid Mortgage Investors' (now Litton Loan's) deed of trust on the Property because of Mortgage Investors' failure to record the deed of trust properly. The granting of the deed of trust to Mortgage Investors is a transfer and a security agreement—it simply is not perfected. All of the elements of § 544 and § 550 of the Code and of the applicable state law, N.C.G.S. § 47–20 *et. seq.,* are satisfied to avoid Mortgage Investors' deed of trust.

Initially, the Trustee gains the rights and powers under § 544(a) to avoid obligations incurred by the debtors. Furthermore, pursuant to § 544(a)(3), the Trustee has the status of a bona fide purchaser who has perfected such transfer at the time of the commencement of the bankruptcy case.

■ The extent to which the Trustee may use these rights and powers arising from his status as a perfectly perfected bona fide purchaser is a matter of North Carolina law. *See Midlantic National Bank v. Bridge (In re Bridge),* 18 F.3d 195, 200 (3rd. Cir.1994) (trustee's avoidance powers under § 544 do not supplant state law; rather the trustee's powers are subject to the law of the locus of the property). Consequently, "wherever under the applicable law such a creditor or bona fide purchaser might prevail over prior transfers, liens encumbrances or the like, the trustee will also prevail." 4 *Collier on Bankruptcy* ¶ 544.01.

According to N.C.G.S. § 47–20.1, "to be validly registered pursuant to § 47–20, a deed of trust or mortgage of real property must be registered in the county where the land lies." The Mortgage Investor deed of trust, therefore, never has been validly registered in Cleveland County. Because the Trustee is a bona fide purchaser under Section 544 of the Code, *i.e.* because of the strong arm provisions of

Section 544 of the Code, and pursuant to N.C.G.S. § 47–20, the Trustee's rights are superior to the unrecorded Mortgage Investor deed of trust, and the Trustee has the power under North Carolina law to avoid Mortgage Investor's deed of trust. *See In re Price,* 97 B.R. 264 (Bankr. E.D.N.C.1989) (avoiding creditor's first priority deed of trust that had been cancelled mistakenly).

## II. Preservation of Mortgage Investors' Avoided Deed of Trust Pursuant to § 551 and Assertion of Trustee's Right to Equitable Subrogation

### A. Preservation of the Avoided Deed of Trust

■ As a result of the Trustee's avoidance of Mortgage Investors' unperfected lien of its deed of trust, the lien and all appurtenant rights are automatically preserved for the Trustee's benefit pursuant to § 551 of the Code. *Price,* 97 B.R. at 266. Thus, as the owner of the lien represented by Mortgage Investors' deed of trust, the Trustee has the authority under the doctrine of equitable subrogation to assert that it is in fact a first priority deed of trust against the second priority deed of trust owned by FirstPlus.

### B. The Failure of FirstPlus' Arguments

FirstPlus argues two points in support of its motion to dismiss. Upon examination, however, these arguments fail to show that the Trustee cannot assert equitable subrogation.

■ Initially, FirstPlus argues that the debtors' granting of a deed of trust to Mortgage Investors was not a "transfer" to be avoided under § 544 because the deed of trust was not recorded in the right county. It is basic bankruptcy law, though, that a "transfer" still occurs even if the transfer is not perfected. Section 101(54) of the Bankruptcy Code contains the following broad definition of "transfer":

> "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.

In the present case, the debtors "transferred" a security interest in the real property to Mortgage Investors when they gave Mortgage Investors the deed of trust. The fact that Mortgage Investors subsequently failed to record the deed of trust properly does not mean that the "transfer" was not complete at the moment the debtors signed the deed of trust. In fact, the mere granting of a security interest must be a transfer because, under North Carolina law, the unperfected security interest would be enforceable against the grantor of the security interest even if the unperfected security interest could not be enforced against a third party. *Coastal Sales Co. v. Weston,* 245 N.C. 621, 97 S.E.2d 267 (1957). Consequently, the Trustee has the authority under § 544 to avoid the transfer of the unperfected security interest from the debtors to Mortgage Investors. *See In re Reasonover,* 236 B.R. 219 (Bankr.E.D.Va.1999) (recognizing that bankruptcy trustees routinely use their avoidance powers to set aside unperfected security interests and unrecorded conveyances, even though such security interests and conveyances could be enforced against the debtor under state law).

In its second argument, FirstPlus asserts that the Trustee cannot improve the priority position of Mortgage Investors' deed of trust. This argument fails, however, because it ignores the rights and powers that the Trustee gained when the avoided Mortgage Investors deed of trust was preserved for the estate's benefit.

■ FirstPlus' argument would win if the analysis stopped with the application of the following general rule:

The estate succeeds only to the priority that the avoided and preserved lien had with respect to competing interests. Defects in the lien under state law, such as failure properly to perfect (or to continue perfection of) a personal property security interest or properly to record a real property lien, are not cured. Avoidance and preservation of the lien do remove the defect or enhance the avoided lien's priority under state law in comparison to competing liens on the same property.

Thus, when a trustee avoids a prepetition security interest because the secured party has failed properly to perfect or record its lien, the avoided lien held by the estate is subject to the same state law defect and is likely subordinate to liens properly perfected or recorded prepetition.

5 Collier on Bankruptcy ¶ 551.02.

The Trustee, however, does not argue that the Mortgage Investors deed of trust will somehow be "cured" when it is avoided and preserved by the Trustee. Instead, the Trustee takes the Mortgage Investors deed of trust as he finds it: unperfected, but with a right to equitable subrogation that would put it in first priority position ahead of FirstPlus' second mortgage. In his Complaint, the Trustee asserts all of the elements of the claim and demonstrates his entitlement to equitable subrogation.

An example of how this assertion of deed of trust rights operates can be seen in *In re Price.* In *Price,* the court was confronted with a situation almost identical to the present case in that there were two deeds of trust on a piece of real property. The first priority deed of trust, held by Southern National Bank ("Southern"), was cancelled accidentally prior to the filing of the debtors' bankruptcy petition, and the Trustee was able to avoid Southern's first priority deed of trust under § 544(a)(3) due to the erroneous cancellation. Instead of allowing the second priority deed of trust, held by Planters National Bank ("Planters"), to move into first position, however, the court held that the trustee was able to preserve the avoided first priority deed of trust's right to rescind the accidentally cancelled deed of trust. *Price,* 97 B.R. at 266. Thus, Planters' second priority deed of trust was entitled to sales proceeds only after payment of the costs of the sale and the amount of Southern's avoided first priority deed of trust. *Id.*

Several factors were important to the court in reaching this decision. First, Planters was not a *bona fide* purchaser with respect to Southern's first priority deed of trust: Planters knew of Southern's first deed of trust when it made its loan. *Id.* Furthermore, Planters did not change its position in reliance on the erroneous cancellation. *Id.* Finally, if the debtors had not filed bankruptcy, "as between Southern and Planters ... Southern could rescind the accidentally cancelled deed of trust and maintain the first position." *Id.* Consequently, the equities favored the trustee's efforts to rescind the accidental cancellation and obtain first priority status for the avoided deed of trust.

In the present case, the equities also favor the Trustee's efforts to obtain first priority status for the avoided deed of trust of Mortgage Investors. FirstPlus was not a bona fide purchaser when it made its loan to the debtors in exchange for a second mortgage. FirstPlus also did not change its position in reliance on the fact that Mortgage Investors filed its deed of trust in the wrong county. In fact, if the debtors had not filed bankruptcy, as between FirstPlus and Mortgage Investors, Mortgage Investors still could have filed its deed of trust in Cleveland County and sought equitable subrogation to BB & T's first priority deed of trust. Thus, in light of the compelling reasoning in *Price,* it is apparent that the Trustee has the right to assert his claim for equitable subrogation such that he would have a first priority deed of trust on the real property.

## C. Analysis of the Complaint

■ Because the Trustee has the right to assert a claim for equitable subrogation, the only question before the Court is whether the Trustee has pleaded such a claim effectively in his Complaint. The answer to that issue is clearly "yes."

■ "Equitable subrogation is a remedy well established under North Carolina law." *In re White*, 183 B.R. 713, 714 (Bankr.M.D.N.C.1995) (*citing Wallace v. Benner*, 200 N.C. 124, 131, 156 S.E. 795, 798–99 (1931)). The North Carolina Supreme Court has recognized the general rule that:

> Subrogation is a mode of equitable relief which operates on principles of natural justice without regard to form and independent of any contractual relation between the parties to be affected by it. It has been defined "as that change by which another person is put into the place of a creditor, so that the rights and securities of the creditor pass to the person who, by being subrogated to him, enters into his right. It is a legal fiction, by force of which an obligation extinguished by a payment made by a third person is treated as still subsisting for the benefit of this third person, who is thus substituted to the rights, remedies, and securities of another. The party who is subrogated is regarded as entitled to the same rights, and indeed as constituting one and the same person with the creditor whom he succeeds."

*Peek v. Wachovia Bank & Trust Company*, 242 N.C. 1, 86 S.E.2d 745, 755 (1955) (*quoting* Sheldon, *The Law of Subrogation*, 2nd Ed., § 2). The requirements for entitlement to equitable subrogation are that the money be advanced for the purpose of discharging the prior encumbrance and that the money actually be applied. *Peek*, 86 S.E.2d at 756.

Drawing all inferences in the Trustee's favor for purposes of ruling on FirstPlus' motion to dismiss, it is clear that the Trustee has properly pleaded a claim for equitable subrogation. The Trustee has alleged that proceeds from the Mortgage Investors loan were used to pay off the entire debt owed by the Debtors to BB & T, and that BB & T cancelled its deed of trust within 3 months of the time that Mortgage Investors made the loan to the Debtors. Thus, the Trustee has pleaded effectively that the Mortgage Investors loan was advance for the purpose of discharging the BB & T debt and the money actually was applied for that purpose.

Furthermore, the Trustee has properly pleaded additional facts showing that the balancing of equities should favor his claim of first priority status for the Mortgage Investors deed of trust. FirstPlus will not be misled or otherwise damaged if the Court corrects Mortgage Investors' mistake by allowing the Mortgage Investors deed of trust to be recorded as a first lien deed of trust. Additionally, at the time FirstPlus received and recorded its deed of trust, FirstPlus knew that its deed of trust was a second lien deed of trust and that it was subordinate to BB & T's first lien deed of trust.

Accepting all of Trustee's well-pleaded allegations as true, every claim in the Plaintiff's Complaint clearly states the necessary elements for a cause of action for equitable subrogation against the defendant FirstPlus. Consequently, FirstPlus is not entitled to dismissal of the claims against it, and the Motion to Dismiss should be denied.

It is, therefore,

**ORDERED** that the Motion to Dismiss of the Defendant FirstPlus Financial, Inc., be, and it is hereby, DENIED; and it is further

**ORDERED** that the Defendant FirstPlus Financial, Inc. shall as provided in Fed.R.Civ.P. 12(a)(4)(A) file and serve its Answer within ten (10) days of the entry of this Order.