FALK v. FANNIE MAE

[225 N.C. App. 685 (2013)]

MICHAEL A. FALK, As Trustee Of The Trust Dated 10-26-1989 Having
The Tax ID Number 65-6043718 (AKA "The Charlotte Falk
Irrevocable Trust"), Plaintiff
v.
FANNIE MAE (AKA FEDERAL NATIONAL MORTGAGE ASSOCIATION);
GLASSRATNER MANAGEMENT & REALTY ADVISORS LLC; IDELL FLOURNEY;
SONYA PETIT; LIBA MEIERE; SHAWNEQUA DODSON; ADOLFO ZARATE; TISHAUN
WHITEHEAD; AND JOHN DOES #1 - #160 BEING THE UNIDENTIFIED LESSEES OF
THE APARTMENT UNITS AT THE PROPERTY KNOWN AS "RIDGEWOOD
APARTMENTS," Defendants

---

FANNIE MAE (AKA FEDERAL NATIONAL MORTGAGE ASSOCIATION),
Third Party Plaintiff
v.
MICHAEL A. FALK, As Trustee of the Trust Dated 10-26-1989 Having
the Tax ID Number 65-6043718 (AKA "The Charlotte Falk Irrevocable Trust")
AND QUICKSILVER, LLC, Third Party Defendants

No. COA12-764

Filed 5 March 2013

**1. Mortgages and Trusts—deed of trust—valid, enforceable, and superior lien—summary judgment improper**

The trial court erred in a deed of trust case by entering summary judgment in favor of defendant Federal National Mortgage Association (FNMA). The trial court improperly relied on N.C.G.S. § 45-37(b) to conclude that the Charlotte Falk Irrevocable Trust's (Trust) lien on the property at issue had expired and the Trust's lien remained valid, enforceable, and superior to FNMA's lien.

**2. Mortgages and Trusts—foreclosure—valid and superior lien—not extinguished by foreclosure—right to foreclose under deed**

The trial court erred in a foreclosure action by reversing an order allowing plaintiff Charlotte Falk Irrevocable Trust (Trust) to proceed with foreclosure on the property at issue. The Trust's lien on the property was valid and superior to defendant Federal National Mortgage Association's (FNMA) lien. Therefore, the Trust's lien was not extinguished by the foreclosure of the FNMA Deed and the Trust had the right under the deed of trust to foreclose on the property.

FALK v. FANNIE MAE

[225 N.C. App. 685 (2013)]

Appeal by plaintiff from order entered 9 March 2012 by Judge Lindsay R. Davis, Jr., in Guilford County Superior Court. Heard in the Court of Appeals 15 November 2012.

*Forman Rossabi Black, P.A., by Gavin J. Reardon and Amiel J. Rossabi, for plaintiff appellant.*

*Carruthers & Roth, P.A., by Rachel S. Decker and J. Patrick Haywood, for defendant appellees.*

McCULLOUGH, Judge.

Michael A. Falk ("plaintiff"), as trustee of "The Charlotte Falk Irrevocable Trust," a trust dated 26 October 1989 having the tax identification number 65-6043718 (the "Trust"), appeals from the trial court's order granting summary judgment in favor of Fannie Mae, also known as the Federal National Mortgage Association ("FNMA"). For the following reasons, we reverse the trial court's grant of summary judgment and remand for entry of an order consistent with this opinion.

## I. Background

In 1992, Quicksilver Corporation (the "corporation"), which sometime thereafter changed its name to Hermes Corporation, acquired Ridgewood Apartments (the "property") for $5,150,000.[1] At the time of the acquisition, the corporation financed $4,600,000 through the seller and borrowed the remaining $550,000 from the Trust.

On 27 October 1994, the corporation transferred the property to Quicksilver, LLC ("Quicksilver"), a limited liability company formed 26 October 1994 for the single purpose of owning the property. Plaintiff and his son, Harry S. Falk, were the member managers of Quicksilver.

Following the transfer, on 28 October 1994, Quicksilver executed a promissory note payable on demand to the Trust in the amount of $600,000 (the "Trust Note"). The promissory note further indicated that it was "executed to evidence [the] debt incurred for the purchase of [the property], and [was] secured by a grant of a Deed of Trust on the Property dated October 28, 1994." The 28 October 1994 deed of trust (the "Trust Deed") encumbering the property for the benefit of the Trust was recorded in Guilford County on 30 December 1994.

---

1. It is unclear from the record which name the corporation was using at the time of the acquisition. Yet, for purposes of this appeal, the corporate name is irrelevant.

FALK v. FANNIE MAE

[225 N.C. App. 685 (2013)]

Plaintiff, on behalf of the Trust, made a demand for payment on the promissory note in December 1994. Quicksilver defaulted; and despite making several payments to the Trust over the years, Quicksilver failed to remedy the default and remains in default to this day. Quicksilver's last payment to the Trust was received 12 November 2008.

Years after the Trust loaned funds to the corporation for the acquisition of the property, Wachovia Bank, N.A. ("Wachovia") loaned additional funds to Quicksilver. In order to secure the repayment of the Wachovia loans, on 2 July 1999, Quicksilver executed a Deed of Trust, Assignments of Rents, Security Agreement, and Financing Statement (the "Wachovia Deed") encumbering the property for the benefit of Wachovia. The Wachovia Deed was recorded in Guilford County on 7 July 1999. In connection with the Wachovia Deed, the Trust also executed a subordination agreement on 28 February 2000, agreeing to subordinate its interest in the property to Wachovia's interest. The subordination agreement was recorded in Guilford County on 15 March 2000.

Thereafter, on 14 May 2001, Quicksilver refinanced its debt to Wachovia by borrowing funds from Lend Lease Mortgage Capital, L.P. ("Lend Lease"). The funds borrowed from Lend Lease were sufficient to satisfy the Wachovia debt. In order to obtain the Lend Lease loan, Quicksilver executed a Multifamily Note (the "FNMA Note") and secured the note by executing a Multifamily Deed of Trust, Assignment of Rents, and Security Agreement (the "FNMA Deed") encumbering the property for the benefit of Lend Lease. The FNMA Note and FNMA Deed were executed, delivered, and recorded in Guilford County on 14 May 2001.

Following recordation, Lend Lease assigned its interest in the FNMA Note and FNMA Deed to FNMA.

When Quicksilver subsequently defaulted on the FNMA Note, FNMA demanded that Quicksilver pay all amounts due. After Quicksilver failed to remedy the default, FNMA proceeded to foreclose on the property. FNMA was the highest bidder at the 21 July 2011 public sale, and the property was transferred to FNMA pursuant to a substitute trustee's deed dated 2 August 2011.

Following acquisition of the property by FNMA, the Trust demanded by letter dated 7 September 2011 that FNMA pay off the amount owed on the Trust Note. The demand letter claimed that the Trust was owed principal and interest totaling $3,525,977.05.

On 6 October 2011, plaintiff filed a verified complaint against FNMA and other defendants seeking a declaratory judgment affirming that the Trust Deed was a valid and enforceable lien on the property and that individual provisions in the Trust Deed, specifically the assignment of rents provision, were valid and enforceable. Plaintiff's verified complaint additionally sought an injunction to enjoin FNMA and the other defendants from collecting rents from residents of the property and interfering with plaintiff's attempts to manage and supervise the property.

In a separate action, plaintiff also sought to foreclose on the property pursuant to the Trust Deed (the "foreclosure action"). A Notice of Hearing Prior to Foreclosure of Deed of Trust was filed on 27 October 2011. The foreclosure action came on for hearing on 17 November 2011 before an Assistant Clerk of Guilford County Superior Court. Following the hearing, the Assistant Clerk filed Findings of Fact and Order of Foreclosure allowing the Trust to proceed with the foreclosure.

On 28 November 2011, FNMA appealed the Findings of Fact and Order of Foreclosure to the superior court.

On 9 December 2011, FNMA filed an answer to plaintiff's verified complaint and additionally filed a counterclaim and third-party complaint. Furthermore, FNMA moved the court for a temporary restraining order and a preliminary injunction to enjoin the fore-closure action.

FNMA's motion for a temporary restraining order came on for hearing at the 16 December 2011 Civil Session of Guilford County Superior Court, the Honorable Patrice A. Hinnant presiding. On 22 December 2011, an order was filed granting FNMA's motion for a temporary restraining order and further ordering that FNMA's appeal from the foreclosure action, FNMA's motion for a preliminary injunction, and any summary judgment motions in plaintiff's declaratory judgment action filed in the interim be scheduled jointly for hearing the week of 16 January 2012.

Before the scheduled hearing, FNMA filed a motion for summary judgment on 6 January 2012, and plaintiff filed a motion for summary judgment on 9 January 2012.

During the 17 January 2012 Civil Session of Guilford County Superior Court, FNMA's appeal from the foreclosure action, FNMA's motion for a preliminary injunction, and FNMA's and plaintiff's

motions for summary judgment came on for hearing before the Honorable Lindsay R. Davis, Jr.

On 9 March 2012, the trial court filed an order granting summary judgment in favor of FNMA and reversing the order in the foreclosure action entered by the Assistant Clerk of Superior Court. Plaintiff appealed.

## II. Analysis

Plaintiff raises the following issues on appeal: whether the trial court erred by (1) granting summary judgment in favor of FNMA; and (2) reversing the order of foreclosure entered by the Assistant Clerk of Superior Court.

### (1) Summary Judgment

**[1]** The primary issue on appeal is whether the trial court erred in entering summary judgment in favor of FNMA.[2] In order to resolve this issue, the determinative inquiry that we must decide is whether the Trust's lien on the property remains valid, enforceable, and superior to FNMA's lien. Upon review of the record and applicable law, we hold that it does.

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)). Particularly pertinent in this case, "[i]f the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal. If the correct result has been reached, the judgment will not be disturbed even though the trial court may not have assigned the correct reason for the judgment entered." *Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989).

At the outset of our analysis, we note that "North Carolina is a 'pure race' jurisdiction, in which the first to record an interest in land holds an interest superior to all other[s] . . . ." *Rowe v. Walker*, 114 N.C. App. 36, 39, 441 S.E.2d 156, 158 (1994); *see also* N.C. Gen. Stat. §§ 47-18 and -20 (2011). Thus, considering only recordation, the Trust,

---

2. The issues plaintiff presents in his brief are really arguments in support of his contention that the trial court erred by entering summary judgment in favor of FNMA. Therefore, we address plaintiff's arguments under the general heading "Summary Judgment."

which recorded the Trust Deed on 30 December 1994, has an interest in the property superior to that of FNMA, whose predecessor in interest, Lend Lease, first recorded the FNMA Deed on 14 May 2001. However, FNMA does not contend that their interest was recorded prior to the Trust's interest. Instead, FNMA argues that the Trust's interest in the property either expired pursuant to the new life of lien statute or that equitable subrogation places them in the priority of Wachovia's past interest. We address these arguments in order.

### Expiration of Lien

In granting summary judgment in favor of FNMA below, the trial court relied on N.C. Gen. Stat. § 45-37(b) to conclude that the Trust's lien on the property had expired. As argued by plaintiff and conceded by FNMA, the trial court's reliance on N.C. Gen. Stat. § 45-37(b) was improper.

In general, N.C. Gen. Stat. § 45-37(b)(1)(2) (2011) establishes a conclusive presumption that the terms of a security instrument recorded before 1 October 2011 have been satisfied from and after the expiration of fifteen years from the latter of "(1) [t]he date when the conditions of the security instrument were required by its terms to have been performed, or (2) [t]he date of maturity of the last installment of debt or interest secured thereby[.]" Moreover, the life of lien provision in the statute provides:

> The lien of any security instrument that secured the payment of money or the performance of any other obligation or obligations and that was conclusively presumed to have been fully paid and performed prior to October 1, 2011, pursuant to the provisions of this subsection is conclusively deemed to have expired and shall be of no further force or effect. No release, satisfaction, or other instrument is necessary to discharge the lien of a security instrument that has expired; however, nothing in this section shall be construed as affecting or preventing the execution and recordation of any such release, satisfaction, or other document.

*Id.*

As decided by our Supreme Court in *Smith v. Davis*, 228 N.C. 172, 45 S.E.2d 51 (1947),[3] the conclusive presumption established in

---

3. *Smith v. Davis* interpreted N.C. Gen. Stat. § 45-37(5), the precursor statute to N.C. Gen. Stat. § 45-37(b).

N.C. Gen. Stat. § 45-37(b) does not arise until after the expiration of the fifteen-year period and does not benefit those who gain an interest in the property before the presumption arises. *Smith*, 228 N.C. at 178, 45 S.E.2d at 56. In light of the primary purpose of the statute, "to promote freer marketability in cases where old and unsatisfied mortgages and deeds of trust, securing debts, were hampering real estate transaction," the Court held that the conclusive presumption arises only in favor of creditors and purchasers for valuable consideration who rely on the presumption when contracting. *Id.* at 180, 45 S.E.2d at 57.

In the present case, the FNMA Deed was recorded and assigned to FNMA on 14 May 2001, approximately six and a half years after the Trust Deed was recorded on 30 December 1994. Accordingly, the statutory presumption had not arisen at the time FNMA acquired a lien on the property and FNMA could not have relied on the presumption. For this reason alone, the trial court erred in entering summary judgment in favor of FNMA on the basis of N.C. Gen. Stat. § 45-37(b).

This, however, is only the beginning of our analysis where, on appeal, summary judgment should be affirmed if it can be sustained on any ground. *See Brown*, 324 N.C. at 428, 378 S.E.2d at 779.

Despite conceding that the trial court erred in granting summary judgment on the basis of N.C. Gen. Stat. § 45-37(b), FNMA contends that the trial court's grant of summary judgment is appropriate because the Trust Deed expired pursuant to the new life of lien statute, N.C. Gen. Stat. § 45-36.24, specifically subsections (b)(1)(a) and (b)(1)(c)(1). Assuming arguendo that N.C. Gen. Stat. § 45-36.24(b)(1)(a) is constitutionally applicable to this case, we agree that subsection (b)(1)(a) is controlling.

The pertinent portion of N.C. Gen. Stat. § 45-36.24(b) provides:

> Except as provided in subsection (g) of this section, unless the lien of a security instrument has been extended in the manner prescribed in subsection (c), (d), or (e) of this section, the security instrument has been foreclosed, or the security instrument has been satisfied of record pursuant to G.S. 45-37, the lien of a security instrument automatically expires, and the security instrument is conclusively deemed satisfied of record pursuant to G.S. 45-37, at the earliest of the following times:

> (1) If the security instrument was first recorded
>     before October 1, 2011:
>
>> a. If the maturity date of the secured oblig-
>>    ation is stated in the security instru-
>>    ment, 15 years after the maturity date.

N.C. Gen. Stat. § 45-36.24(b) (2011).[4] Moreover, "[t]he maturity date of the secured obligation is 'stated' in a security instrument if . . . (iii) the maturity date of the secured obligation . . . can be ascertained or determined from information contained in the security instrument . . . ." N.C. Gen. Stat. § 45-36.24(a)(1)(c). "If all sums owing on the secured obligation are due and payable in full on demand and no alternative date is specified in the secured obligation for payment in full, the maturity date of the secured obligation is the date of the secured obligation." N.C. Gen. Stat. § 45-36.24(a)(1)(b).

Here, the Trust Note indicates that it is a demand note executed on 28 October 1994. Furthermore, no alternative date is specified for payment in full. Applying the above-quoted provisions of N.C. Gen. Stat. § 45-36.24 to these facts, we conclude that the maturity date of the Trust Note is the execution date and that the maturity date is stated in the security instrument for purposes of the statute. Thus, it necessarily follows that the Trust Note was conclusively deemed satisfied and the lien in the Trust Deed automatically expired on 28 October 2009, fifteen years after the maturity date.

Despite the unambiguous language in the statute, plaintiff contends that N.C. Gen. Stat. § 45-36.24 is not controlling in this case because our Supreme Court's reasoning in *Smith v. Davis* concerning N.C. Gen. Stat. § 45-37(b), discussed *supra*, applies with "equal vigor" to N.C. Gen. Stat. § 45-36.24. We disagree.

Whereas N.C. Gen. Stat. § 45-37(b) contains the limiting language, "[i]t shall be *conclusively presumed* that the conditions are . . . complied with or the debts secured thereby paid . . . *as against creditors or purchasers for valuable consideration . . . from and after the expiration of 15 years* from whichever . . . occurs *last*[]", N.C. Gen. Stat. § 45-37(b) (emphasis added), N.C. Gen. Stat. § 45-36.24(b) contains no such limiting language. Besides the stated exceptions, N.C. Gen. Stat. § 45-36.24(b) is absolute in providing that "the lien of a

---

4. The exceptions in subsections (c), (d), (e), and (g) are irrelevant in the present case as plaintiff took no steps to extend the Trust's lien or to foreclose on the property prior to the expiration of the lien under the statute.

security instrument *automatically expires*, and the security instrument is *conclusively deemed satisfied* of record . . . at the *earliest* of the [listed] times[.]" N.C. Gen. Stat. § 45-36.24(b) (emphasis added). There is no language in N.C. Gen. Stat. § 45-36.24(b) that would prevent a lien from expiring as to a party acquiring an interest in the collateral before the expiration of the fifteen-year period.

Plaintiff also contends that N.C. Gen. Stat. § 45-36.24(b) is not controlling because the statute is unconstitutional as applied to this case.[5] Specifically, plaintiff contends that retroactive application of N.C. Gen. Stat. § 45-36.24(b) to this case violates N.C. Const. art. I, § 19, U.S. Const. art. I, § 10, and/or U.S. Const. amend. XIV, § 1, because it retroactively impairs the Trust's vested rights. We agree.

In general, there is no constitutional limitation that prohibits the passage of retroactive laws. *Bateman v. Sterrett*, 201 N.C. 59, 63, 159 S.E. 14, 17 (1931). However, the General Assembly may not enact retroactive laws that impair the obligation of contracts or disturb vested rights. *Id.* "When a statute would have the effect of destroying a vested right if it were applied retroactively, it will be viewed as operating prospectively only." *Bolick v. American Barmag Corp.*, 306 N.C. 364, 371, 293 S.E.2d 415, 420 (1982).

In this case, the Trust's interest in the property vested on 28 October 1994 upon Quicksilver's execution of the Trust Note and the Trust Deed. At that time, N.C. Gen. Stat. § 45-36.24 had not been enacted by the General Assembly. N.C. Gen. Stat. § 45-36.24 did not take effect until 1 October 2011. In regard to the Trust's vested rights, as previously discussed, the effect of retroactive application of N.C. Gen. Stat. § 45-36.24 to this case is to cause the Trust's lien on the property to automatically expire to the benefit of all subsequently acquired interests in the property on 28 October 2009, fifteen years after the maturity date of the security instrument. Thus, the retroactive application of N.C. Gen. Stat. § 45-36.24 destroys the Trust's vested rights to the benefit of FNMA.

Furthermore, "[i]t is well settled that the general laws of the State in force at the time of the execution of a contract enter into and become a part thereof." *Bank v. Derby*, 218 N.C. 653, 658, 12 S.E.2d 260, 263 (1940). At the time the Trust gained a security interest in the property pursuant to the Trust Deed, N.C. Gen. Stat. § 45-37 governed the expiration of the Trust's lien. Yet, as previously discussed, the

---

5. The trial court avoided this argument by relying on N.C. Gen. Stat. § 45-37(b), which was in effect when the Trust Deed was executed on 28 October 1994.

Trust's lien has not expired to the benefit of FNMA pursuant to N.C. Gen. Stat. § 45-37(b), because FNMA acquired their interest in the property prior to the time the statutory presumption took effect.

As a result, the Trust's lien has not expired to the benefit of FNMA. Although we agree that the Trust's lien expired pursuant to the terms of N.C. Gen. Stat. § 45-36.24(b)(1), we find that the statute is unconstitutional as applied to this case.

### Subrogation

In a final effort to uphold the trial court's grant of summary judgment in its favor, FNMA contends that principles of equitable subrogation entitle it to the lien priority of Wachovia, superior to that of the Trust. Consequently, FNMA asserts that foreclosure of the FNMA Deed extinguished any interest the Trust had under the Trust Deed. We disagree.

" 'Subrogation is a consequence which equity attaches to certain conditions. It is not an absolute right, but one which depends on the equities and attending facts and circumstances of each case.' " *First Union Nat. Bank of North Carolina v. Lindley Laboratories, Inc.*, 132 N.C. App. 129, 130, 510 S.E.2d 187, 188 (1999) (quoting 73 Am. Jur. 2d *Subrogation* § 11 (1974)).

In *Wallace v. Brenner*, 200 N.C. 124, 156 S.E. 795 (1931), our Supreme Court explained that equitable subrogation does not arise in favor of a "mere volunteer" who advances funds that are used to discharge a prior encumbrance. *Id.* at 131, 156 S.E. at 798. But,

> where money is expressly advanced in order to extinguish a prior encumbrance, and is used for this purpose, with the just expectation on the part of the lender of obtaining a valid security, . . . the lender . . . may be subrogated to the rights of the prior encumbrancer whose claim he has satisfied, there being no intervening equity to prevent. It is of the essence of this doctrine that equity does not allow the encumbrance to become satisfied as to the advancer of the money for such purposes, but as to him keeps it alive, and as though it had been assigned to him as security for the money.

*Id.* at 131, 156 S.E. at 798-99 (internal quotation marks and citations omitted). Applying this rule to the facts in *Wallace*, the Court found that where the lender seeking subrogation was not a mere volunteer and was not guilty of culpable negligence, and where the intervening

lienor was not prejudiced, it would be inequitable not to grant the lender subrogation.[6] *Id.* at 133, 156 S.E. at 799.

It is this reasoning from *Wallace* on which FNMA now relies to argue for equitable subrogation in this case, where Lend Lease loaned Quicksilver money for the express purpose of paying off Quicksilver's debt to Wachovia and Quicksilver agreed to give the FNMA Deed first priority.

However, in *Peek v. Wachovia Bank & Trust Co.*, our Supreme Court inferred that equitable subrogation was only entitled to those "excusably ignorant" of an intervening lien. 242 N.C. 1, 15, 86 S.E.2d 745, 755 (1955) ("[A]s a general rule one who furnishes money for the purpose of paying off an encumbrance on real or personal property, at the instance either of the owner of the property or of the holder of the encumbrance, either upon the express understanding or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, *will be subrogated to the rights of the prior lienholder as against the holder of an intervening lien, of which the lender was excusably ignorant.*"). (emphasis added). Although excusable ignorance was not determinative in *Peek*, in *First Union Nat. Bank of North Carolina v. Lindley Laboratories, Inc.*, this Court relied on the language in *Peek* and determined the lender was not entitled to equitable subrogation, because it was not excusably ignorant of an intervening lien. 132 N.C. App. at 130-31, 510 S.E.2d at 188-89.

In this case, the Trust, having subordinated its lien to that of Wachovia, is in the position of an intervening lienor. Thus, where the Trust's lien was recorded, FNMA cannot claim excusable ignorance. Furthermore, where FNMA had notice of the Trust's lien, FNMA could have taken steps to guarantee itself first priority. FNMA, however, failed to successfully do so. Despite common management, the Trust and Quicksilver are separate entities; thus, an agreement by Quicksilver to grant FNMA first priority is not binding on the Trust. Lastly, we see the potential for prejudice to the third-party beneficiaries of the trust if FNMA was subrogated to the status of Wachovia. As a result, we hold that subrogation would be inequitable in this instance.

---

6. "The exceptions to the general rule to the doctrine of subrogation [are]: (1) The relief is not granted to a volunteer; (2) nor where the party claiming relief is guilty of culpable negligence; (3) nor where to grant relief will operate to the prejudice of the junior lienholder." *Wallace*, 200 N.C. at 132, 156 S.E. at 799.

### (2) Foreclosure

**[2]** Plaintiff also contends that the trial court erred in reversing the order filed in the foreclosure action allowing the Trust to proceed with foreclosure on the property. We agree.

For the reasons discussed above, the Trust's lien on the property was valid and superior to FNMA's lien. Therefore, the Trust's lien was not extinguished by the foreclosure of the FNMA Deed and the Trust has the right under the Trust Deed to foreclose on the property.

### III. Conclusion

For the reasons discussed above, we reverse the trial court's grant of summary judgment in favor of FNMA and remand for entry of an order consistent with this opinion. Additionally, we reverse the trial court's order reversing the order of foreclosure entered by the Assistant Clerk of Superior Court.

Reversed and remanded.

Judges GEER and STEPHENS concur.