IN THE SUPREME COURT OF NORTH CAROLINA

No. 197PA13

Filed 19 December 2014

MICHAEL A. FALK, as Trustee of the Trust dated 10-26-1989 having the Tax ID Number 65-6043718 (a/k/a "The Charlotte Falk Irrevocable Trust")

v.

FANNIE MAE (a/k/a FEDERAL NATIONAL MORTGAGE ASSOCIATION); GLASSRATNER MANAGEMENT & REALTY ADVISORS, LLC; IDELL FLOURNEY; SONYA PETIT; LIBA MEIERE; SHAWNEQUA DODSON; ADOLFO ZARATE; TISHAUN WHITEHEAD; and JOHN DOES #1 - #160, BEING THE UNIDENTIFIED LESSEES OF THE APARTMENT UNITS AT THE PROPERTY KNOWN AS "RIDGEWOOD APARTMENTS"

---

FANNIE MAE (a/k/a FEDERAL NATIONAL MORTGAGE ASSOCIATION),
        Third-Party Plaintiff

v.

MICHAEL A. FALK, as Trustee of the Trust dated 10-26-1989 having the Tax ID Number 65-6043718 (a/k/a "The Charlotte Falk Irrevocable Trust") and QUICKSILVER, LLC,
        Third-Party Defendants

On discretionary review pursuant to N.C.G.S. § 7A-31 and on appeal of right of a constitutional question pursuant to N.C.G.S. § 7A-30(1) to review a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 738 S.E.2d 404 (2013), reversing and remanding an order entered on 9 March 2012 by Judge Lindsay R. Davis, Jr. in Superior Court, Guilford County. Heard in the Supreme Court on 6 October 2014.

*Rossabi Black Slaughter, P.A., by Gavin J. Reardon and Amiel J. Rossabi, for plaintiff/third-party defendant-appellee Michael A. Falk and third-party defendant-appellee Quicksilver, LLC.*

*Horack, Talley, Pharr & Lowndes, P.A., by Zipporah B. Edwards and Robert B. McNeill; and Carruthers & Roth, P.A., by Rachel S. Decker and J. Patrick Haywood, for defendant/third-party plaintiff-appellant Fannie Mae and defendant-appellant GlassRatner Management and Realty Advisors, LLC.*

HUNTER, Justice.

The case before us involves a dispute between Michael Falk, Trustee of the Charlotte Falk Irrevocable Trust (Trust), and the Federal National Mortgage Association (Fannie Mae), concerning which party's mortgage lien on the Ridgewood Apartments, located in Guilford County, has priority status. The solution to the dispute involves application of our State's "life of lien" statute, N.C.G.S. § 45-37(b).[1]

Subsection 45-37(b) establishes a conclusive presumption that the conditions of prior liens are satisfied after fifteen years from the later of either of two dates: the date on which the instrument requires performance, or the date of maturity of the last installment of debt (maturity date). Because in *Smith v. Davis*, 228 N.C. 172, 45 S.E.2d 51 (1947), this Court established that the 1923 version of this statute did not apply the presumption to lienholders who acquired and recorded their liens before the expiration of senior mortgage indebtedness, the Court of Appeals applied that interpretation to the current version of the statute. We hold this application was erroneous because the unique legislative language in the 1923 Act was not

---

[1] N.C.G.S. § 45-37(b) (2013) applies to security instruments recorded and subject to the conclusive presumption provided by that statute before 1 October 2011. Security instruments recorded after that date are subject to the "life of lien" requirements of N.C.G.S. § 45-36.24 (2013).

present in subsequent revisions of the life of lien statute. We conclude therefore that the General Assembly did not intend to continue this limitation and that the limitation did apply to the transactions in this case. N.C.G.S. § 45-37(b) authorizes a senior lienholder to extend the "life of the lien" by filing an affidavit with the register of deeds containing the information required by the statute. We hold that, absent the filing of such an affidavit, N.C.G.S. § 45-37(b) allows a court to conclusively presume that prior liens are satisfied irrespective of whether a subsequent lienholder obtained its interest before or after expiration of the fifteen year period from the maturity date. Accordingly, we reverse the decision of the Court of Appeals.

Ridgewood Apartments (the property) consists of a number of tracts containing apartments for rent. In 1992 Michael Falk and his son Harry Falk, as shareholder-directors of Quicksilver Corporation, purchased the property for $5,200,000. The Falks subsequently converted Quicksilver Corporation into Quicksilver, LLC (Quicksilver) and became the sole member-managers. On 27 October 1994, Quicksilver acquired the property by deed and on the following day, 28 October, secured the payment with a promissory note (Trust Note) in the amount of $600,000 and a deed of trust (Trust Deed) "to evidence a debt incurred for the purchase of [the property]" in 1992. The Trust Note established a 14% per annum interest rate in the event of default. The Trust Deed was recorded in Guilford County on 30 December 1994.

In December 1994, Michael Falk issued an oral demand on behalf of the Trust to Quicksilver for partial payments on the loan.[2]  The Trust contends that Quicksilver's failure to make payments placed Quicksilver in default, thus triggering the 14% default interest rate as specified in the Trust Note.  Despite several partial payments to the Trust in later years, the Trust contends Quicksilver never cured the default, and the Trust Note has accrued interest at the default rate since 1995.

In 1999 Wachovia Bank, N.A. (Wachovia) loaned funds to Quicksilver to make improvements to the property.  To fulfill a condition Wachovia imposed on its loan to Quicksilver, Michael Falk and a Co-Trustee signed an agreement subordinating the Trust's interest in the property to Wachovia.  This subordination agreement was recorded on 15 March 2000.  Wachovia secured its loan through a Deed of Trust, Assignment of Rents, and Security Agreement and Financing Statement (Wachovia Deed) encumbering the property.  The Wachovia Deed was recorded in Guilford County on 7 July 1999.

To obtain a better interest rate, Quicksilver refinanced the Wachovia loan with funds from Lend Lease Mortgage Capital, L.P. (Lend Lease).  To secure this loan, on 14 May 2001, Quicksilver executed and recorded a Multifamily Note secured by a Multifamily Deed of Trust, Assignment of Rents, and Security

---

[2] Unless otherwise noted, all references to Michael Falk or to the Trust's activities will be to Michael Falk's activities as Trustee of the Trust.

Agreement encumbering the property. Although the original deed of trust to the Trust was still of record, no subordination agreement was signed for this transaction. The Wachovia Note and Deed of Trust were satisfied of record. Subsequently, Lend Lease sold and assigned its Note and Deed of Trust to Fannie Mae (hereinafter the FNMA Note and FNMA Deed).

Quicksilver subsequently defaulted on the FNMA Note and Fannie Mae foreclosed on the property in 2011. Fannie Mae was the highest bidder at the foreclosure sale and received a Trustee's Deed for the property dated 2 August 2011. Following Fannie Mae's foreclosure, Mr. Falk's counsel sent a letter to Fannie Mae stating that the Trust held a superior lien on the property and demanding immediate payment of $3,525,977.05 to cover the principal and interest owing under the Trust Note.

After Fannie Mae refused to pay the amount demanded, the Trust filed a verified complaint in Superior Court, Guilford County, against Fannie Mae and others seeking both a declaratory judgment that the Trust Deed was a "valid and enforceable lien" and an injunction to prevent Fannie Mae from collecting rents from residents of the property. In a separate action, the Trust sought to foreclose upon the property under its Trust Deed. After a foreclosure hearing before an assistant clerk of superior court, the assistant clerk filed findings of fact and an order permitting the Trust to proceed with foreclosure on the property.

Fannie Mae appealed the foreclosure order and findings of fact to the superior court. Fannie Mae also filed an answer to the Trust's verified complaint, a counterclaim and third-party complaint, and motions seeking a temporary restraining order and preliminary injunction to stop the foreclosure action. The superior court granted Fannie Mae's motion for a temporary restraining order and scheduled a hearing on all other matters for January 2012. Before the hearing date, Fannie Mae and Mr. Falk filed cross motions for summary judgment.

The matter was heard during the 17 January 2012 civil session of Superior Court, Guilford County. At the hearing, the Trust argued that the Trust Deed was valid and enforceable and entitled it to foreclose upon the property because of Quicksilver's default under the Trust Note. Fannie Mae argued, *inter alia*, that the Trust's lien had expired by operation of law and, in the alternative, that the FNMA Deed was superior to the Trust Deed "pursuant to subrogation." The trial court granted Fannie Mae's motion for summary judgment, ruling that the version of N.C.G.S. § 45-37(b) in effect when the Trust Note matured on 28 October 1994 operated to terminate the Trust's lien on the property no later than 28 October 2009. *See* N.C.G.S. § 45-37(b) (1991). This termination of the Trust's lien enabled Fannie Mae to foreclose upon the property in 2011 without having the transaction encumbered by a senior lien. The Trust appealed.

At the Court of Appeals the Trust argued, *inter alia*, that the trial court erred by granting Fannie Mae's motion for summary judgment because N.C.G.S. § 45-37(b)'s conclusive presumption that prior liens expire after fifteen years is only available to a subsequent creditor who acquires an interest in the property *after* that fifteen year period has expired. Fannie Mae's brief before the Court of Appeals conceded this point. The Court of Appeals analyzed the applicability of N.C.G.S. § 45-37(b) (2011) and concluded that Fannie Mae could not avail itself of the statute's conclusive presumption.[3] The court cited this Court's opinion in *Smith v. Davis*, 228 N.C. 172, 45 S.E.2d 51, for the proposition that subsection 45-37(b)'s conclusive presumption is only available to creditors who rely on it when contracting for their interest in the property. *Falk v. Fannie Mae*, ___ N.C. App. ___, ___, 738 S.E.2d 404, 408 (2013) (citing *Smith*, 228 N.C. at 180, 45 S.E.2d at 57). The court then concluded that the trial court erred by giving Fannie Mae the benefit of subsection 45-37(b)'s conclusive presumption when the mortgage giant acquired its interest in the property on 14 May 2001, only six and a half years after the Trust Deed was recorded on 30 December 1994. *Id* at ___, 738 S.E.2d at 408.

The Court of Appeals then considered two additional grounds on which it could possibly affirm the trial court's order: (1) whether our State's "new" life of lien statute, N.C.G.S. § 45-36.24(b), operates to terminate the Trust's lien to the benefit

---

[3] The applicable version of N.C.G.S. 45-37(b) was effective 1 October 2011. N.C.G.S. § 45-37(b) has not been amended since 2011.

of Fannie Mae, and (2) whether equitable subrogation entitles Fannie Mae to take the status of senior lienholder.

On the first issue, the court determined that if subsection 45-36.24(b)—which has an effective date of 1 October 2011—were retroactively applied to the Trust Note and Deed, the Trust's lien would terminate on 28 October 2009. The court then concluded that such a retrospective application would be unconstitutional. Specifically, the court determined that retroactive application of subsection 45-36.24(b) to the Trust Deed would impair the Trust's vested rights in the property in violation of one or more of these provisions: Article I, Section 19 of the North Carolina Constitution, Article I, Section 10 of the United States Constitution, and Amendment XIV, Section 1 to the United States Constitution. *Id.* at ___, 738 S.E.2d at 410.

The Court of Appeals also rejected Fannie Mae's argument that the doctrine of equitable subrogation entitled it to senior lienholder status. The court concluded that under this Court's precedent in *Peek v. Wachovia Bank & Trust Co.*, 242 N.C. 1, 86 S.E.2d 745 (1955), a creditor could only benefit from equitable subrogation if it was "excusably ignorant" of an intervening lien. *Falk*, ___ N.C. App. at ___, 738 S.E.2d at 411 (citing *Peek*, 242 N.C. at 15, 86 S.E.2d at 755). In this case Fannie Mae had record notice of the Trust's lien on the property and therefore could not claim to be excusably ignorant for purposes of equitable subrogation. *Id* at ___, 738

S.E. 2d at 411. For this and the foregoing reasons, the Court of Appeals reversed the trial court order and remanded for further proceedings.

Fannie Mae[4] sought discretionary review, which we allowed; we also retained Fannie Mae's notice of appeal based upon a constitutional question. In our order allowing review, we directed the parties to address the applicability of N.C.G.S. § 45-37(b) (1991) and N.C.G.S. § 45-37(b) (2011) because the trial court's order granting summary judgment to Fannie Mae applied section 45-37(b) (1991) to support its ruling.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2013). We review de novo an order granting summary judgment. *Howerton v. Arai Helmet, Ltd.,* 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004) (citation omitted).

Since 1923 our State has limited the life of security liens in order to reduce the number of unsatisfied deeds of trust and other encumbrances hampering the marketability of property. In their current forms, our "life of lien" statutes—

---

[4] GlassRatner Management & Realty Advisors, LLC—Fannie Mae's agent for the collection of rents on the property—and various lessees of the apartment units in Ridgewood Apartments are also parties to this action. For simplicity, we will refer only to Fannie Mae.

N.C.G.S. §§ 45-37(b) and 45-36.24 (2013)—impose a fifteen year period on the life of any lien on real property that was not extended through the filing of an affidavit or other instrument. After this period, these statutes allow a subsequent creditor of the grantor to transfer the subject property free of the prior lienholder's encumbrances.

In the present case the Trust executed and recorded the Trust Deed on 30 December 1994 to secure repayment of an earlier loan. Considered under our state's "race recording" statute alone, the Trust's act of recording its deed established its superior interest in the property relative to the FNMA Deed, which was recorded on 14 May 2001. *Falk*, ___ N.C. App. at ___, 738 S.E.2d at 408; *see* N.C.G.S. §§ 47-18, -20 (2013). The issue before the Court is whether the Trust's failure to file an affidavit extending the life of its lien before Fannie Mae's foreclosure upon the property in 2011 undermined its security interest in the property.

This issue presents two questions: (1) Whether the Trust Note and the Trust Deed, executed in 1994, continued to impose a valid lien on the property in 2011 when Fannie Mae initiated foreclosure; and (2) Whether Fannie Mae, which acquired its interest in the property less than seven years after the Trust Deed was executed and recorded, could benefit from the statutorily imposed expiration of the Trust's lien.

The Court of Appeals considered two statutes under which the Trust Deed could have expired. The court first considered N.C.G.S. § 45-37(b), our State's "old" life of lien statute which, in an earlier version, was in effect at the time the Trust Deed was executed. The court also considered retroactive application of the "new" life of lien statute, N.C.G.S. § 45-36.24, which applies to all security instruments whenever recorded, except, inter alia, those "conclusively presumed to have been fully paid and performed pursuant to . . . [subsection] 45-37(b) [before] October 1, 2011." N.C.G.S. § 45-37(b).

We begin by considering subsection 45-37(b). It is a settled principle of constitutional law that "any law affecting the validity, construction and enforcement of a contract at the time of its making becomes a part of the contract as fully as if incorporated therein." *Adair v. Orrell's Mut. Burial Ass'n, Inc.*, 284 N.C. 534, 538, 201 S.E.2d 905, 908 (citations omitted), *appeal dismissed*, 417 U.S. 927 (1974). As a general matter, therefore, courts must apply the law that is in effect when a contract is formed in any future dispute over the construction of that contract. Consistent with this principle, the trial court applied the then-current version of subsection 45-37(b) (codified at N.C.G.S. § 45-37(b) (1991)) to determine whether the Trust Deed was valid and enforceable after Fannie Mae's foreclosure in 2011. The 1991 version of N.C.G.S. § 45-37(b) was effective from 1 January 1992 until 1 October 2011, and was thus part of the "law of the contract" when the Trust Note and Trust Deed were executed in 1994.

It is also, however, "a generally accepted principle of statutory construction that there is no constitutional limitation upon legislative power to enact retroactive laws which do not impair the obligation of contracts or disturb vested rights." *Piedmont Mem'l Hosp. v. Guilford Cnty.*, 221 N.C. 308, 311, 20 S.E.2d 332, 334 (1942) (citations omitted). When the General Assembly rewrote subsection 45-37(b) in 2011, it made no substantive changes to the 1991 version of the statute. *See* Act of June 18, 2011, ch. 312, sec. 12, 2011 N.C. Sess. Laws 1212, 1229-30. Other than containing minor editorial revisions, N.C.G.S. § 45-37(b) (2011) merely established that the statute would apply "only to security instruments . . . that were conclusively presumed pursuant to this subsection to have been fully paid and performed prior to October 2011" and that a new life of lien statute, N.C.G.S. § 45-36.24 (2011), would apply to security instruments recorded after that date. It also required that creditors file affidavits or a separate instrument postponing the date of lien expiration on or before 1 October 2011.

Subsection 45-37(b) is "retroactive" in the limited sense that it applies to "any security instrument recorded before October 1, 2011." Because the current version of subsection 45-37(b) does not include any changes that would "impair the obligation of contracts or disturb vested rights" in relation to the security instruments at issue in this case, *id.* at 311, 20 S.E.2d at 334, we conclude that the Court of Appeals' application of that statute to the Trust Deed was proper. This is the version of the statute that we apply here.

Subsection 45-37(b) states, in relevant part:

> It shall be conclusively presumed that the conditions of any security instrument recorded before October 1, 2011, securing the payment of money or securing the performance of any other obligation or obligations have been complied with or the debts secured thereby paid or obligations performed, as against creditors or purchasers for valuable consideration from the mortgagor or grantor, from and after the expiration of 15 years from whichever of the following occurs last:
>> (1) The date when the conditions of the security instrument were required by its terms to have been performed, or
>> (2) The date of maturity of the last installment of debt or interest secured thereby;
>
> provided that on or before October 1, 2011, and before the lien has expired pursuant to this subsection, the holder of the indebtedness secured by the security instrument or party secured by any provision thereof may file an affidavit with the register of deeds which affidavit shall specifically state:
>> (1) The amount of debt unpaid, which is secured by the security instrument; or
>> (2) In what respect any other condition thereof shall not have been complied with; or
>> may record a separate instrument signed by the secured creditor and witnessed by the register of deeds stating:
>> (1) Any payments that have been made on the indebtedness or other obligation secured by the security instrument including the date and amount of payments and
>> (2) The amount still due or obligations not performed under the security instrument.
>
> The effect of the filing of the affidavit or the recording of a separate instrument made as herein provided shall be to postpone the effective date of the conclusive presumption of satisfaction to a date 15 years from the filing of the affidavit or from the recording of the separate instrument.

In interpreting this statute, we are guided by our obligation to give effect to the plain meaning of its terms. "'When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required. However, when the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment.'" *N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009) (citations omitted).

By its plain terms, subsection 45-37(b) establishes a conclusive presumption that, as against subsequent creditors or purchasers for value from the grantor, the terms of a deed of trust have been satisfied from and after the expiration of fifteen years from the latter of "(1) [t]he date when the conditions of the security instrument were required by its terms to have been performed, or (2) [t]he date of maturity of the last installment of debt or interest secured thereby." A lienholder may file an affidavit or record a separate instrument with the register of deeds containing the required information and thus postpone expiration of its lien beyond the fifteen year period; however, if the lienholder does not file such an additional instrument, this statute directs that a senior lienholder will no longer be able to assert his lien against the interests of a subsequent creditor after fifteen years have expired.

Here the Trust does not contend that it filed an affidavit or other instrument with the Guilford County Register of Deeds to extend its lien on the property. Therefore, the only question we must resolve is the date on which subsection 45-37(b)'s fifteen year expiration period began in relation to the Trust's lien.

Our State has long recognized that "a promissory note, payable on demand, is a present debt . . . and the statute [of limitations] begins to run from the date of it." *Caldwell v. Rodman*, 50 N.C. (5 Jones) 139, 140 (1857) (citation and quotation marks omitted). The trial court noted that this rule "has clear application in determining when a claim for breach of the obligation to pay according to the instrument accrues for statute of limitations purposes, but no reason exists why it should not apply as well where the issue is when a lien expires." We agree.

Here the Trust Note was payable on demand. Accordingly, the Trust Note matured on the date of its execution, 28 October 1994. For the purposes of N.C.G.S. § 45-37(b), therefore, the Trust Note—and the Trust Deed that was executed to secure repayment under the note—expired on 28 October 2009, fifteen years after the date of the Note's execution. This expiration prevented the Trust from being able to assert its interest in the property "against creditors or purchasers for valuable consideration from the mortgagor or grantor" after that date. N.C.G.S. § 45-37(b) (2011).

The remaining question is whether Fannie Mae qualifies as a creditor or purchaser for value who can claim the benefit of subsection 45-37(b)'s conclusive presumption. By its plain terms, subsection 45-37(b) does not limit the creditors or purchasers for value from the mortgagor who may claim the benefit of the conclusive presumption in relation to prior liens. The statute says nothing about when a subsequent creditor must obtain its interest from the grantor. The only time limitation imposed by the statute concerns when the conclusive presumption can be claimed at all: "from and after the expiration of 15 years." *Id.*

Giving effect to the plain terms of this statute, therefore, we hold that the Trust Deed expired on 28 October 2009 because the Trust did not file the required documentation to extend the life of its security interest. We hold further that Fannie Mae, as a qualifying creditor who took its interest in the property from the mortgagor Quicksilver, could benefit from subsection 45-37(b)'s conclusive presumption irrespective of the fact that its interest was recorded and assigned before expiration of the statute's fifteen year period.

The Court of Appeals arrived at a different conclusion. That court cited our opinion in *Smith* to argue that "[i]n light of the primary purpose of the statute," subsection 45-37(b)'s conclusive presumption "arises only in favor of creditors and purchasers for valuable consideration who rely on the presumption when contracting." *Falk*, ___ N.C. App. at ___, 738 S.E. 2d at 408 (citing *Smith*, 228 N.C.

at 180, 45 S.E.2d at 57). Because Fannie Mae acquired the FMNA Deed less than seven years after the Trust Deed was recorded, the court reasoned that Fannie Mae could not have relied on the statutory presumption because it had not yet arisen. *Id.* at ___, 738 S.E.2d at 408.

In *Smith* this Court addressed a situation in which a bank acquired a deed of trust on property within fifteen years of an earlier lien. When the junior lienholder foreclosed after the fifteen year period and attempted to transfer the property free of the earlier encumbrance, the lower courts found the prior lien valid and enforceable. The Court interpreted N.C.G.S. § 45-37(5) (1943),[5] the predecessor statute to subsection 45-37(b), and concluded the presumption was only available to creditors who loaned funds to the mortgagor after the fifteen years had expired. *Smith*, 228 N.C. at 178-79, 45 S.E.2d at 56-57.

The Court's interpretation of the statute in *Smith* was not based on the statutory language itself, but rather on the language of the caption appended to the General Assembly's original enactment in 1923: "An Act to Facilitate the Examination of Titles and to Create a Presumption of Payment of Instruments Securing the Payment of Money After Fifteen Years from the Date of the Maturity of the Debts Secured Thereby." *Id.* at 178, 45 S.E.2d at 56 (quoting Act of Mar. 6, 1923, ch. 192, sec. 1, 1923 N.C. Pub. [Sess.] Laws 508, 508 (codified at section 2594

---

[5] N.C.G.S. § 45-37(5) was recodified in 1969 to the current numbering format of subsection 45-37(b).

of the Consolidated Statutes of North Carolina (1924) (amended 1935) (recodified at N.C.G.S. § 45-37 (1943))). The Court looked to the caption of the original Act because it believed the statute was ambiguous regarding the creditors the General Assembly intended to benefit by creating the conclusive presumption on the life of liens. *Id.* at 179-80, 45 S.E.2d at 57. The Court interpreted the caption's use of the verb "to facilitate" to render the statute's provisions "prospective" in the sense of making future transactions easier by removing the obstacle of "old and unsatisfied mortgages." *Id.* at 180, 45 S.E.2d at 57. The Court in *Smith* held that the General Assembly's intention was to protect only parties "who extend credit or purchase for a valuable consideration 'from and after' the expiration of the fifteen year period." *Id.*

The Court's interpretation of the statute in *Smith* was short-lived. In 1951 the General Assembly rejected that interpretation by enacting an amendment to section 45-37 that permitted subsequent creditors to avail themselves of the conclusive presumption that prior liens expire after fifteen years regardless of when they extended credit. *See* Act of Mar. 20, 1951, ch. 292, sec. 1, 1951 N.C. Sess. Laws 243. When this amendment to the statute was codified, subsection 45-37(5) included the statement that the conclusive presumption would protect subsequent creditors "irrespective of whether the credit was extended or the purchase was made before or after the expiration of said fifteen years." *Id.*; N.C.G.S. § 45-37(5) (Supp. 1965).

The 1951 amendment to the statute explicitly contradicted the *Smith* interpretation of the statute. The change remained in place until 1969, when the General Assembly acted (in the words of the new session law's caption) "to recodify and simplify the law concerning discharge of record of mortgages, deeds of trust and other instruments." Act of Jun. 9, 1969, ch. 746, 1969 N.C. Sess. Laws 762, 762. The 1969 amendment reformatted the statute into its current form (subsection 45-37(b)) and eliminated the clause inserted in 1951 stating "irrespective of whether the credit was extended or the purchase was made before or after the expiration of said fifteen years." *Id.*, sec. 1, at 764-65; *see* N.C.G.S. § 45-37(b) (Supp. 1969). With only very minor changes, the law codified in 1969 remains today, resulting in the statute that we have reproduced above.

We find the language in the version of subsection 45-37(b) that has existed since 1969 unambiguous with respect to which creditors may avail themselves of the conclusive presumption bearing on the expiration of prior liens. The statute makes the presumption effective in relation to "creditors or purchasers for valuable consideration from the mortgagor or grantor." N.C.G.S. § 45-37(b). The presumption is categorical—it imposes no limitation on when a creditor must obtain its interest in the property to be able to avail itself of the statute's protection after the expiration of the fifteen year period.

In its brief before this Court, the Trust argues that when the 1969 General Assembly eliminated the language inserted in 1951, it effectively reenacted the *Smith* decision's understanding of the statutory language over the objections of an earlier legislature. We reject this argument. The Court in *Smith* found the statute ambiguous regarding which creditors could benefit from the presumption. For this reason, the Court looked outside the statute to supply a meaning that it did not find in the statutory language itself. Accordingly, if the 1969 General Assembly intended to enact the *Smith* decision's interpretation of language the Court found ambiguous, the legislature would have introduced a clear statement of the rule rather than allowing the original, purportedly ambiguous language to stand.

Because the language of the statute is unambiguous, we need not construe the possible legislative intent behind it. *N. C. Med. Bd.*, 363 N.C. at 201, 675 S.E.2d at 649. Even if we look to evidence of legislative intent, however, we find nothing in the history of the statute's evolution since 1951 that suggests the legislature's intent to follow this Court's decision in *Smith* by limiting the benefit of the statute to creditors acquiring their interest after the fifteen year period. When the General Assembly revised the statute in 1969 and eliminated the language explicitly making the presumption applicable to subsequent creditors irrespective of when they acquired their interest, it announced its intention as one of "simplify[ing]" the statute. *See* Ch. 746, sec. 1, 1969 N.C. Sess. Laws at 762. If the General Assembly intended to do more than clarify and streamline the statutory language, it could

have inserted new terms. If it intended to enact the *Smith* decision's limitation, it could simply have said the conclusive presumption was available only to creditors who rely on it when contracting for their interest.

We hold that N.C.G.S. § 45-37(b) allows creditors or purchasers for value from a grantor to benefit from the conclusive presumption that prior liens expire after fifteen years irrespective of when those creditors obtain their interest. Accordingly, in this case the statute acted to terminate the Trust Deed and permitted Fannie Mae to foreclose on the property unencumbered. The Court of Appeals erred in overturning the trial court's order granting summary judgment for Fannie Mae on this basis. Because we find a proper interpretation of subsection 45-37(b) dispositive of the controversy before us, we need not reach the other issues addressed before the Court of Appeals. Accordingly, we reverse the decision of the Court of Appeals.

REVERSED.